# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FREDERICK BROWN**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 2:12cv633 |
| | ) **Electronic Filing** |
| **DAIRY FARMERS OF AMERICA, INC.**, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

March 24, 2014

## I. INTRODUCTION

Plaintiff, Frederick Brown ("Brown" or "Plaintiff") filed a three (3) count Complaint alleging: (1) racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); (2) gender discrimination also in violation of Title VII; and (3) wrongful termination, against Defendant Dairy Farmers of America, Inc. ("DFA"). DFA has filed a motion for summary judgment, Brown has responded and the motion is now before the Court.

## II. STATEMENT OF THE CASE

DFA is a milk marketing cooperative dairy food processor and serves nearly 17,000 members. DFA's Concise Statement of Material Facts ("DFA CSMF") ¶ 1. DFA requires its employees to adhere to its established policies and procedures and to act consistently with applicable laws and regulations. DFA CSMF ¶ 3. One of the policies DFA maintains and trains its employees on is related to inappropriate physical contact and fighting. DFA CSMF ¶ 4.

Brown, a black male, began employment at DFA's Wilmington, Pennsylvania, facility in May of 2008 in the Molding Department. Complaint ¶ 9; DFA CSMF ¶ 5. On March 23, 2010,

Brown reported to DFA that he had injured his shoulder while on duty. DFA CSMF ¶ 7. He was treated at the Sharon Regional Health and was permitted to return to work that same day, but was restricted to light duty. DFA CSMF ¶ 8. Brown did not miss any work due to his injury, and his medical bills were covered by workers' compensation insurance. DFA CSMF ¶ 9.

In response to two (2) separate incidents involving inappropriate physical contact by employees[1], DFA Plant Manager, Tim Sallmen ("Sallmen"), reminded all employees that DFA would not tolerate any inappropriate conduct, specifically including unwanted touching or hitting of another employee. DFA CSMF ¶ 16. Any employee found to have engaged in such conduct would face severe consequences, up to and including termination. *Id.* The reminder was made at the April 2010 employee meeting which was part of a series of meetings that DFA requires all employees to attend. *Id.* At these meetings, "Improper Touching" was a listed agenda subject and the specific message from Sallmen was for the employees to keep their hands to themselves. DFA CSMF ¶ 17. Brown signed a roster certifying his attendance at one of the meetings addressing the subject regarding inappropriate physical contact. DFA CSMF ¶ 18.

On April 28, 2010, an Employee Incident Report was submitted by Matt Cameron ("Cameron"), a temporary employee, in which Cameron alleged that as he was walking to his locker, Brown punched him "right between the legs" causing Cameron to fall to the ground. Declaration of Charles Erney[2] ("Erney Decl.") ¶ 18; DFA CSMF ¶ 19. Brown was interviewed

---

[1] On March 8, 2010, Ed Lowe, a black male employee, was given a one (1) day unpaid suspension for using his forearm to pin a white male co-worker against the conveyor belt of the packaging line. DFA CSMF ¶ 13. On March 29, 2010, Sarah Sydlowski was given a five (5) day unpaid suspension and a last chance agreement in response to reports of inappropriate touching of male co-workers. DFA CSMF ¶ 14.

[2] Erney is employed by DFA as the Manager of Human Resources in the New Wilmington facility. Erney Decl. ¶ 3.

by Sallmen and Human Resource Manager Bob Christoff ("Christoff"), who were investigating the incident, and Brown alleged that Cameron made a sudden movement towards Brown's genital area as if he was going to punch him, and Brown struck Cameron in the groin area. DFA CSMF ¶¶ 22, 23 & 24; Brown's Responsive Concise Statement of Material Fact ("Brown RCSMF") ¶ 23. Another DFA employee, Ron Smith ("Smith") witnessed the incident and submitted an incident report that corroborated Cameron's version of the incident. DFA CSMF ¶¶ 21 & 25.

Sallmen and Christoff determined that Brown's conduct was in violation of DFA's policy against inappropriate physical conduct and decided that Brown's employment with DFA would be terminated.[3] DFA CSMF ¶ 27. On May 14, 2010, DFA sent Brown a letter[4] informing him that his employment was terminated effective immediately. DFA CSMF ¶ 29. The letter also indicated that Brown's conduct violated a Group I rule outlined in the employee handbook which prohibits "[f]ighting on company premises or any other act during production time or on Company property intended to inflict bodily harm or threaten bodily harm." Erney Decl. Exhibit 2. DFA also terminated Cameron's assignment through the temporary agency on May 14, 2010. DFA CSMF ¶ 28.

Similarly on May 14, 2010, Sarah Sydlowski ("Sydlowski") and Stephanie Benincase ("Benincase"), both white female employees, were terminated from employment with DFA for violation of DFA policy after they engaged in a physical altercation on May 9, 2010. DFA CSMF ¶ 32.

---

[3] Brown contends that the decision to terminate his employment with DFA was based on his race, gender and the fact he filed for worker's compensation. Brown RCSMF ¶ 27.

[4] Brown was on vacation at the time.

**III.    LEGAL STANDARD FOR SUMMARY JUDGMENT**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*. The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e).  Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond

"by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994). ).

IV.   DISCUSSION

Since its inception, Title VII has made it an "unlawful employment practice for any employer . . . to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). A plaintiff can sustain a claim of discrimination under Title VII by presenting either direct or circumstantial evidence of discrimination. *See Duffy v. Magic Paper Group, Inc.*, 265 F.3d 163, 167 (3d Cir. 2001). Because Brown has not provided direct evidence of discrimination, our inquiry is governed by the three-part framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-803, (1973) (the "McDonnell Douglas analysis").

In order to establish a claim under Title VII, Brown must first establish a *prima facie* case of discrimination. To do so, Brown must show: (1) that he is a member of a protected class; (2) that he was qualified for the position; (3) that he was . . . fired from that position; and (4) that similarly situated employees who are not members of the protected class were treated more favorably. *Goosby v. Johnson & Johnson Medical, Inc.*, 228 F.3d 313, 318-319 (3d Cir. 2000); *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410-411 (3d Cir. 1999).

Once the employee establishes a *prima facie* case of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employer's adverse employment decision. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802. If the employer makes that showing, the burden of production shifts once again to the employee

to establish that the employer's proffered justification for the adverse action is pretextual. *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 254-255 (1981). Throughout this burden-shifting exercise, the burden of persuasion remains on the employee. *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1095 n.4 (3d Cir. 1995) (citing *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. at 253).

For the purposes of this motion, FDA does not dispute that Brown satisfies the first three elements necessary to establish a *prima facie* case of race and/or gender discrimination. FDA asserts, however, that Brown is unable to establish the final element, that similarly situated employees who are not members of the protected class were treated more favorably. Brown contends that he is able to establish a *prima facie* case of both race and gender because Sydlowski, a white female employee, was treated more favorably as she was only suspended after she engaged in inappropriate groping of male employees.

Brown's reliance upon Sydlowski as a sole comparator that was treaty more favorably is without merit. The record shows that Sydlowski was terminated for fighting with another employee on the same day, May 14, 2010, as Brown was terminated. Unlike Brown, however, Sydlowski had been placed on a last chance agreement after the groping incident. Similar to Brown, however, Sydlowski's altercation with Benincase occurred subsequent to the April , 2010, meeting during which the employees were warned that unwanted physical touching or hitting of another employee could result in termination. Sydlowski, therefore is an inappropriate comparator for both Brown and FDA[5].

---

[5] To be considered similarly situated, comparator employees must be similarly situated in all relevant respects. *Russell v. University of Toledo*, 537 F.3d 596 (6th Cir. 2008); *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259-261 (5th Cir. 2009).

Brown, however, ignores the record evidence that Cameron, the white male temporary employee involved in the incident at issue here, was terminated from his assignment with FDA. Moreover, Benincase, a white female FDA employee, was also terminated on May 14, 2010, based upon her physical altercation with Sydlowski. There is no evidence in the record that Benincase had any previous suspensions. The evidence in this instance shows that both a white male and a white female were terminated for the same conduct that resulted in Brown's termination.

Brown also argues in support of his discrimination claim that Ed Lowe ("Lowe"), a black employee, was not terminated but was suspended for one (1) day for a physical altercation with another employee. Lowe's incident, however, occurred prior to the April meeting during which the employees were warned to keep their hands to themselves or risk termination. More importantly, Lowe is a member of the same protected class as Brown, a black male, yet it is alleged that Lowe was treated more favorably. Because Lowe was of the same protected class, his treatment is not evidence that establishes that a similarly situated employee, not a member of the protected class, was treated more favorably. *See Anderson v. Equitable Res., Inc.*, 2009 U.S. Dist. LEXIS 113256 (W.D. Pa. Dec. 4, 2009) ("Without any similarly situated employees outside the protected class who were not fired despite engaging in the same prohibited conduct, the Court cannot find that this evidence warrants an inference of discrimination or rebuts Defendant's proffered reasons for Plaintiff's termination.").

Brown therefore, has failed to provide sufficient evidence to demonstrate that he was treated differently than similarly situated employees who were not members of the protected classes. Accordingly, Brown has failed to establish a *prima facie* case of either race or gender discrimination under Title VII.

Notwithstanding Brown's failure to establish a *prima facie* case, the Court further finds that had he established a *prima facie* case of discrimination on the basis of race or gender FDA would prevail nonetheless under *McDonnell Douglas* because Brown is unable to show that the FDA's legitimate, nondiscriminatory reason for terminating his employment was pretextual.

After a defendant has stated a legitimate, nondiscriminatory reason for the adverse employment action, the plaintiff may defeat a motion for summary judgment by satisfying at least one of the following two prongs articulated by the Third Circuit in *Fuentes v. Perskie*:

> [T]he plaintiff must point to some evidence, direct or circumstantial, from which the fact-finder could reasonably either (1) disbelieve the employers articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

*Fuentes v. Perskie*, 32 F.3d at 764. The evidence of record here is woefully inadequate to establish either prong of *Fuentes*.

In order to discredit the FDA, Brown must present evidence from which a rational jury could find the FDA's articulated reason for terminating him "unworthy of credence." *Id.* at 765 (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992)). Here, Brown fails to identify any "weaknesses, implausibilities, inconsistencies, incoherencies [sic], or contradictions in the [FDA's] proffered legitimate reasons." *Simpson v. Kay Jewelers*, 142 F.3d at 644.

Brown may also show pretext by offering sufficient evidence to show that discrimination was more likely than not a cause for FDA's adverse actions by directing the Court to evidence with sufficient probative force that would allow a fact-finder to conclude by a preponderance of the evidence that the protected characteristic, age or gender, was a motivating or determinative factor in the employment decision. *Id.* at 644-645. To do so, Brown may show that: (1) the FDA has previously discriminated against Brown; (2) the FDA has discriminated against other people

within the Brown's protected class or within another protected class; or (3) he FDA has treated more favorably similarly situated persons not within the protected class. *Id.* at 645. Brown, however, has not produced evidence sufficient to allow a reasonable jury to conclude that the motivating or determinative cause of his termination was invidious discrimination.

Brown also argues that he has sufficient basis to bring a claim under the mixed-motive theory as set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). A "mixed-motive" case is one in which the plaintiff shows that the adverse decision is the result of mixed-motives, where both legitimate reasons and illegitimate, discriminatory reasons were involved. *See Watson v. SEPTA*, 207 F.3d 207, 215 (3d Cir.2000), *cert. denied*, 531 U.S. 1147 (2001). The point of a mixed-motive theory is that a plaintiff may suffer discrimination even though there may also be a legitimate reason for the adverse employment action. *Id.* at 216.

Following some division among the circuits as to application of *Price Waterhouse*, Congress enacted two new statutory provisions geared toward setting the applicable standard in a mixed-motive case. The first provision stated: "[e]xcept as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). The second provision gave the employer a limited affirmative defense to "demonstrate that it would have taken the same action in the absence of the impermissible motivating factor." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 95, (2003) (quoting 42 U.S.C. § 2000e-5(g)(2)(B)).

Although the courts were divided about whether a discrimination claim brought under a mixed-motive theory had to be proven with direct evidence, the Supreme Court resolved the circuit split in *Desert Palace* by holding that a plaintiff does not need to present "direct evidence" of discrimination to proceed on a mixed-motive theory of discrimination under Title

9

VII. *Id.* at 92. In order to trigger a mixed-motive framework, "a plaintiff need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that race, color, religion, sex, or national origin was a motivating factor for any employment practice." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). The evidence that a plaintiff must present "must be such that it demonstrates that the decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision." *Id.* at 513. In this instance, Brown has failed to direct this Court to any such evidence.

Accordingly, FDA's summary judgment motion with respect to Brown's Title VII claims based upon race and gender will be granted.

Finally, Brown contends he was wrongfully terminated by FDA. In Pennsylvania, the general rule is that employees are employed "at will" and, accordingly, their employment may be terminated for any reason or no reason at all. *See Geary v. United States Steel Corp.*, 319 A.2d 174, 176 (Pa. 1974) ("Absent a statutory or contractual provision to the contrary, the law has taken for granted the power of either party to terminate an employment relationship for any or no reason."). Pennsylvania courts have recognized certain public policy exceptions to the at-will employment doctrine. *See, e.g., Shick v. Shirey*, 716 A.2d 1231, 1234 n.3 (Pa. 1998). Moreover, the Pennsylvania Supreme Court has recognized an exception that permits a terminated employee to bring a cause of action against an employer where the employee was terminated for exercising his statutorily conferred right to file a claim against the employer under Pennsylvania's workers' compensation statute. *Id.* at 1238.

Brown claims that DFA terminated his employment in retaliation for his contemplating the filing of a claim under Pennsylvania's Workers' Compensation Act to recover medical expenses for injuries he sustained in the course of his employment. *See* Complaint ¶¶ 35 & 36. To establish a *prima facie* case for retaliation, "a plaintiff must show: (1) protected employee

activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003) (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997)). Causation can be based upon: (1) the temporal proximity between the protected activity and the adverse employment action; (2) an intervening pattern of antagonism; or (3) the evidence taken as a whole. *See Bartos v. MHM Corr. Servs.*, 454 Fed. Appx. 74, 78 (3d Cir. 2011) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000)).

It is undisputed in this case that Brown missed no work resulting from his injury on March 23, 2010, and his medical bills were covered by workers' compensation insurance. DFA CSMF ¶ 9; Brown RCSMF ¶ 9. Moreover, Brown received wage loss workers' compensation benefits for his injury beginning on September 17, 2010, subsequent to his termination, and continuously for nineteen (19) months thereafter until resolving his claim on or about April 25, 2012. DFA CSMF ¶¶ 11 & 12; Brown RCSMF ¶¶ 11 & 12. There is no evidence in this case that Brown's workers' compensation claim was ever discussed with DFA or that his injury and subsequent claim were ever matters of contention between Brown and FDA.

Moreover, Brown has failed to present sufficient evidence to support a causal connection between his workers' compensation claim and his termination. The mere fact that an alleged discharge occurs subsequent to the filing of a workers' compensation claim is insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events. *Christman v. Cigas Machine Shop, Inc.*, 293 F. Supp. 2d 538, 545 (E.D. Pa. 2003). Further, the temporal proximity between his compensable injury and his termination is also insufficient on its own to suggest a discriminatory animus. Brown has directed this Court to no probative evidence to show a causal nexus. Instead, Brown relies on mere speculation which, "absent specific facts or

reasonable inferences, is simply not enough to overcome a motion for summary judgment." *Griesbaum v. Aventis Pharms.*, 259 Fed. Appx. 459, 466 (3d Cir. 2007). Brown's claim based upon wrongful termination, therefore, fails as a matter of law.

**V.  CONCLUSION**

The Court finds that there are no material facts in dispute, Brown is unable to show that that FDA violated his rights under Title VII or that FDA wrongfully terminated his employment. Accordingly, FDA's motion for summary judgment shall be granted. An appropriate order will follow.

s/ David Stewart Cercone  
David Stewart Cercone  
United States District Judge

cc:   John E. Quinn, Esquire  
      Maria Greco Danaher, Esquire  
      Samantha M. Clancy, Esquire

      (*Via CM/ECF Electronic Mail*)